UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GEORGE MARTIN and <br> JANET MARTIN, Husband and Wife, <br><br> Plaintiffs, <br><br> v. <br><br> INTERSTATE BATTERY SYSTEM <br> OF AMERICA, INC., et al., <br><br> Defendant(s). | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 12-CV-184-JED-FHM <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## OPINION AND ORDER

Before the Court are Plaintiffs' Objections to the Court's December 12, 2013 Opinion and Order (Doc. 79), authored by Magistrate Judge Frank H. McCarthy. Plaintiffs request that the Court reverse Judge McCarthy's decision (Doc. 78) denying the plaintiffs' motion to compel the defendants to respond to certain discovery requests regarding other lead-acid battery explosions occurring in the past five years. Plaintiffs have also filed a Motion to Strike Duplicative Expert Witness (Doc. 66), which asks the Court to limit defendants to the use of a single causation expert.

**I.   Plaintiffs' Objections to the Magistrate Judge's Opinion and Order (Doc. 78)**

### BACKGROUND

This products liability case involves the explosion of a deep cycle marine battery used by George Martin to power a trolling motor on his boat. On September 30, 2011, Mr. Martin hooked the marine battery up to his battery charger for approximately the fifth time since its purchase 17 months earlier. The next day, he traveled with his boat to Ft. Gibson Lake, unloaded the boat into the lake and attempted to operate his trolling motor, which did not function properly. Thereafter, Mr. Martin inspected the battery and its connections. During that

process, the battery exploded into Mr. Martin's face and eyes, causing him severe injuries. The plaintiffs, Mr. Martin and his wife, Janet, seek to hold the defendants liable for his injuries, alleging that the battery at issue was defective.

On October 11, 2013, plaintiffs filed a motion to compel which sought full and complete responses to certain interrogatories and requests for production. In his December 12, 2013 Opinion and Order ruling on plaintiffs' motion, the Magistrate Judge noted that plaintiffs had failed to identify exactly what the motion sought by way of additional discovery.[1] It was surmised that the plaintiffs wanted information regarding other lawsuits or complaints about similar explosions of the defendants' batteries. The Opinion and Order focused on Interrogatory No. 17 as the only discovery request which was arguably directed at the information sought in plaintiffs' motion to compel:

> INTERROGATORY NO 17. Please identify any and all complaints, lawsuits, or claims submitted or known to you relating to the alleged defect(s) of similar makes and models of the subject product referenced in Plaintiffs' Petition, and for those that are or have been in litigation, include the case name, case number and venue of litigation.

(Doc. 78, at 2).[2] Defendant Johnson Controls Battery Group, Inc ("Johnson Controls")[3] response to this interrogatory provides as follows:

---

[1] Judge McCarthy referenced numerous other deficiencies in the plaintiffs' motion. These include plaintiffs' reliance upon the former version of Fed. R. Civ. P. 26, which contained a broader scope of permissible discovery, and plaintiffs' failure to identify and include the full recitation of the specific discovery requests which allegedly lacked a sufficient response.

[2] The Opinion and Order also stated that plaintiffs' reply brief had "mentioned Request for Production Nos. 7 and 13 for the first time, but did not make any specific argument related to those requests." (Doc. 78, at 2 n.2). This Court concurs with Judge McCarthy's assertion that discovery requests beyond Interrogatory No. 17 were not the subject of argument or authority advanced in the plaintiffs' or defendants' briefing on the motion to compel.

[3] Plaintiffs also pursue their claims against Interstate Battery System of America, Inc., Interstate All Battery Center, Inc., and Distributor Operations, Inc. (hereafter, the "other defendants").

> RESPONSE: Defendant objects to this request as over broad, unduly burdensome and not reasonably calculated to lead to the discovery of relevant and/or admissible evidence to the extent that it is unlimited in time or scope so that it relates to substantially similar occurrences. Defendant further objects that the phrase "the alleged defect(s)" is vague and confusing because Plaintiff has not alleged any defect with sufficient specificity to inform Defendants of what the alleged defect is. Notwithstanding and without waiving its objections, and in the spirit of cooperation, Defendant states that Mr. Jacobson has issued a report on behalf of Plaintiff which wrongly contends that the subject battery was defective for failing to include two warnings he has created and, to the best of Defendant's understanding, it is Plaintiff's intent to allege Mr. Jacobson's conclusion as "the alleged defect." Accordingly, Defendant has searched to identify any complaints for the five (5) year period prior to plaintiff's alleged accident with respect to the same make and model where the complaint contains allegations substantially similar to the opinion of defect in Mr. Jacobson's May 1, 2103 report. There were none. Defendant then broadened the search to determine if during that same period there were any allegations substantially similar to the opinion of defect in Mr. Jacobson's May 1, 2103 report for the other models of marine batteries sold by defendants. There were none. (The search was not limited to warnings. It included the underlying substance of the proposed warnings to identify any occurrence where a claimant asserted personal injury caused by an explosion due to plate growth and electrolyte loss resulting from overcharge.)

(*Id.*, at 2-3). Judge McCarthy found that Johnson Controls' response adequately answered the interrogatory based upon a finding that plaintiffs' expert witness, Dr. Dean Jacobson, had opined that the only defect present in the battery at issue was a failure to provide adequate warnings. (*See id.*, at 3 ("Plaintiffs' expert has not identified any specific design or manufacturing defect in the subject battery, except that the battery lacked sufficient warnings.")). Hence, the Magistrate Judge denied plaintiffs' motion to compel on this basis, among others:

> Considering the content of Plaintiffs' expert's testimony, Defendant's adequate response to Interrogatory No. 17, the lack of specificity in Plaintiff's arguments, the fact that the date for identification of experts and submission of expert reports is long past (May 1, 2013), that Plaintiff's expert was deposed months ago (July 30, 2013), the fact that Plaintiffs' motion to compel was filed on October 11, 2013 when at the time the discovery deadline was set for October 31, 2013, and the four-times extended discovery deadline is set to expire on December 31, 2013, the court finds that Fed. R. Civ. P. 26(b)(2)(C)(iii)3 is properly applied to deny Plaintiffs' motion to compel.

(*Id.*, at 4).

3

Plaintiffs now object to the Opinion and Order, arguing that it is clearly erroneous and contrary to law.

## STANDARD

The district court reviews a magistrate judge's order on a non-dispositive motion under a "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(a); Fed.R.Civ.P. 72(a). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Somerlott v. Cherokee Nation Distributors, Inc.*, 686 F.3d 1144, 1148 (10th Cir. 2012) (quoting *Rio Grande Silvery Minnow (Hybognathus amarus) v. Bureau of Reclamation*, 599 F.3d 1165, 1175 (10th Cir. 2010)). A magistrate is afforded broad discretion in the resolution of non-dispositive discovery disputes, and "the court will overrule the magistrate's determination only if this discretion is abused." *Aircraft Fueling Sys., Inc. v. Sw. Airlines Co.*, , 2011 WL 4915549, at *1 (N.D. Okla. Oct. 17, 2011).

## DISCUSSION

This Court has thoroughly reviewed the plaintiffs' motion to compel and the related briefing, the Opinion and Order issued by Judge McCarthy, and the plaintiffs' objections to the Opinion and Order and the related briefing. The Court finds plaintiffs' objections are without merit, with one exception, that being plaintiffs' objection regarding the scope of their product defect claim and related discovery.[4] The primary issue is that plaintiffs did not adequately

---

[4] Determining the merit of this particular objection is complicated by the poor presentation made by plaintiffs before the Magistrate Judge. Judge McCarthy correctly pointed out serious deficiencies in plaintiffs' motion to compel and that such deficiencies alone could have justified denying the motion. However, in the interest of ensuring complete discovery and a full opportunity for the parties to develop and litigate their dispute, the Court has fully examined the merits of plaintiffs' objections.

establish the scope of their products liability claim by attempting to rebut the defendants' characterization of Dr. Jacobson's opinions. Instead of supplying Dr. Jacobson's expert report to the Magistrate Judge—as they have done in their objections—the plaintiffs relied upon the allegations in their Amended Complaint. The Magistrate Judge relied upon Dr. Jacobson's deposition testimony, which was cited by defendants, to reach the conclusion that plaintiffs' claims were limited to an allegation of inadequate warnings.

While Dr. Jacobson did state in his deposition testimony that his opinions regarding defects in the battery were based solely on a failure to warn, his report, upon which defendants' discovery responses are based, is clearly not so narrow. In his report, Dr. Jacobson makes numerous assertions of defect in the subject battery as a result of its construction, which allegedly created a situation where an internal electrical arc in the battery could ignite the flammable vapors which had built up from overcharging of the battery. To that end, the report states as follows:

> 16.7  The subject battery experienced significant positive plate growth, which resulted in contact with the negative elements (strap and lugs) which led to the generation of an internal arc, which detonated the hydrogen-oxygen mixture in the battery cell ullage spaces.
>
> 16.8  If a given cell shorts by positive to negative metal contact, the other cells go into over-charge during charging. The charger is going to continue charging the battery and gassing is going to be generated by the overcharge of the unshorted cells and positive plate growth in the overcharging cells can be excessive.
>
> \*   \*   \*
>
> 16.35  It is opined that Mr. Martin was not responsible for the battery explosion which caused his injuries. There was no evidence of misuse of the battery that was not related to a lack of warnings and information with the battery design. The battery conditions appeared seriously degraded even though the use was consistent with foreseeable operation and typical maintenance. The plate growth and resultant defective conditions resulting in the explosion were not caused by Mr. Martin, but rather by Johnson Controls.

> 16.36  It is opined that the subject battery, that was only used for 17.5 months (less than 1.5 years), had degraded grids with excessive plate growth which resulted in contact between positive and negative structure.  The act of checking the wires between the subject battery and the electric trolling motor only served to generate a condition whereby Mr. Martin was in the danger zone of the exploding battery.
>
> 16.37  The defective plate growth and corresponding structural degradation conditions in the subject battery resulted in an unreasonably dangerous product which created a substantial risk of personal injury due to the lack of implementation of available and established industry standards and practices and state of the  art technology relative to marine battery design, warnings, instructions, fabrication and quality control necessary for safe battery operation and reasonable conformity with consumer expectations.

(Doc. 79, at 93; 97-98).

It is clear from these excerpts of Dr. Jacobson's report that, in addition to a failure to warn, he opined that the battery itself was defective and that the purported defect may have resulted in the condition that brought about the explosion.  Defendant Johnson Controls has therefore incorrectly characterized the scope of Dr. Jacobson's report in its response to Interrogatory No. 17.  While the response to Interrogatory No. 17 purports to have provided information with respect to "any occurrence where a claimant asserted personal injury caused by an explosion due to plate growth and electrolyte loss resulting from overcharge", it is evident that the defendants do not believe themselves to be obligated to provide such information.

To the extent the Opinion and Order suggests that discovery should have been limited to claims and defenses regarding only a failure to warn, it is inconsistent with the opinions set forth in Dr. Jacobson's report.  While this was certainly not the fault of the Magistrate Judge, it does warrant modification of the Opinion and Order.  Defendant Johnson Controls is ordered to provide, within 14 days of the date of this Opinion and Order, a supplemental response to Interrogatory No. 17 which complies with this Opinion and Order and fully embraces the scope

of Dr. Jacobson's expert report. The Magistrate Judge's Opinion and Order is affirmed in all other respects.[5]

## II. Plaintiffs' Motion to Strike Duplicative Expert Witness (Doc. 66)

Plaintiffs request that the Court enter an order limiting the defendants to a single expert to testify as to causation of the battery explosion. The plaintiffs suggest that the two expert witnesses identified by the defendants, John L. Devitt and Dr. Joseph E. Liedhegner, are duplicative and that one should be stricken under Fed. R. Evid. 403. Plaintiffs identify opinions in Mr. Devitt's expert report and Dr. Liedhegner's Rule 26 disclosures which substantially overlap—specifically as to the cause of the battery's explosion. Defendants counter that Mr. Devitt and Dr. Liedhener have different areas of expertise and will testify as to different aspects of the issues raised in plaintiff's expert's report. More specifically, the defendants state that:

> Mr. Devitt is an electrical engineer who will testify regarding electrical aspects of the battery and eliminate an internal electrical malfunction as the cause of the alleged explosion. On the other hand, Mr. Liedhegner is a chemical engineer who will testify regarding warnings and various chemical aspects of the battery, including the fact that plate growth revealed misuse of the battery. Both conclude that Mr. Martin's injuries were not caused by a manufacturing or design defect, but they each reach the conclusion via a distinct avenue based on their respective qualifications.

(Doc. 72, at 8).[6]

---

[5] Plaintiffs' motion to compel complained of the other defendants' failure to respond to written discovery. According to the parties' briefing, *all* defendants were served with the same discovery requests as those served on Johnson Controls. Judge McCarthy's Opinion and Order permitted the other defendants to have additional time to respond to the discovery requests directed to them because of confusion as to service of the discovery requests. The discovery requests served on the other defendants had not yet been answered at the time plaintiffs' objections were filed. Accordingly, this decision applies with equal force to the other defendants' discovery responses.

[6] The defendants' statement as to the subject of Mr. Devitt's testimony seriously undermines their statements in reference to plaintiffs' objections discussed in section I, *supra*. Mr. Devitt's testimony clearly contemplates an allegation on the part of plaintiffs as to a defect in the battery

7

"While district judges have broad discretion to exclude expert witnesses, they may not do so 'arbitrarily, or on the basis of mere numbers.'" *Nalder v. W. Park Hosp.*, 254 F.3d 1168, 1173 (10th Cir. 2001) (quoting *Green Constr. Co. v. Kan. Power & Light Co.*, 1 F.3d 1005, 1014 (10th Cir. 1993)).  In discussing a district court's decision to limit purportedly duplicative expert testimony, the *Nalder* court stated:

> We have several concerns about these decisions. Most importantly, they point to nothing other than overlapping *qualifications* of plaintiffs' experts and the mere possibility that duplicative testimony could result. Our review satisfies us that plaintiffs took care to compartmentalize the areas of testimony of each of their expert witnesses and that plaintiffs' amended expert designations thus contain little or no actual overlap of the experts' proffered *testimony*—and certainly not enough to support a blanket prohibition.

*Id.* at 1174 (emphasis in original).[7]

Here, the Court is guided by the rationale of *Nalder*.  While some overlap is present in the designated areas of testimony of Dr. Liedhegner and Mr. Devitt, the Court finds that their testimony, as described by defendants, is sufficiently distinct to negate a finding that their testimony is duplicative.  It is true that the 85 page report of plaintiffs' expert does largely encompass both areas of testimony presented by defendants' two experts.  But it does not necessarily follow that the defendants should be limited to a single expert.  Defendants state that Dr. Liedhegner and Mr. Devitt will testify as to distinct aspects of plaintiffs' claims of defect in the subject battery.  It is also premature to speculate that their testimony will necessarily be as duplicative as plaintiffs suggest.  At the time of plaintiffs' motion, neither expert had been deposed by plaintiffs.  Indeed, plaintiffs point out that the primary motivation underpinning their

---

beyond a failure to warn; specifically, that a defect in the battery caused an internal arc. In short, Devitt's opinions appear to be intended to rebut Dr. Jacobson's opinions regarding the cause of the battery's explosion.

[7]  Despite these concerns, the *Nalder* court found that the district court had not abused its discretion. *Id.* at 1175.

motion is to avoid the cost of deposing both out-of-state experts. The Court is sensitive to the costs resulting from such depositions, but cost alone is not sufficient cause to warrant the limitation plaintiffs seek. Moreover, it does not appear that defendants seek to introduce both experts for the purpose of increasing plaintiffs' costs. The defendants do not seek to introduce numerous experts in this case; only two. It is not unreasonable to expect that two experts would be utilized to testify as to the complex scientific issues presented here. Should this case proceed to trial, Mr. Devitt and Dr. Liedhegner will not be permitted to testify in a duplicative manner and will be subject to the compartmentalization of their testimony which defendants have put forth in support of their opposition to plaintiffs' motion. *See, e.g., Nalder*, 254 F.3d at 1173; *Marsee v. U.S. Tobacco Co.*, 866 F.2d 319, 324 (10th Cir. 1989) (not error to exclude cumulative evidence). Plaintiffs have not demonstrated that either of defendants' experts should be stricken as duplicative at this stage of the proceedings.

## CONCLUSION

**IT IS THEREFORE ORDERED** that plaintiffs' Objection (Doc. 79) is **granted in part and denied in part**.

Defendant Johnson Controls is ordered to provide, within 14 days of the date of this Opinion and Order, a supplemental response to Interrogatory No. 17 which complies with this Opinion and Order and fully embraces the scope of Dr. Jacobson's expert report. The other defendants are likewise ordered to supplement their responses to Interrogatory No. 17 should their responses be similarly deficient.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Strike Duplicative Expert Witness (Doc. 66) is **denied** at this time.

**SO ORDERED** this 28th day of March, 2014.

_____
JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE