# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **GEORGE MARTIN and** ) <br> **JANET MARTIN, Husband and Wife** ) <br> ) <br> **Plaintiffs,** ) <br> ) <br> v.  ) <br> ) <br> **INTERSTATE BATTERY SYSTEM** ) <br> **OF AMERICA, INC., a Texas Corporation;** ) <br> **JOHNSON CONTROLS BATTERY** ) <br> **GROUP, INC., a Wisconsin Corporation;** ) <br> **INTERSTATE ALL BATTERY** ) <br> **CENTERS, INC., a Texas Corporation;** ) <br> **DISTRIBUTOR OPERATIONS, INC.,** ) <br> **A Texas Corporation,** ) <br> ) <br> **Defendants.** ) | Case No. 12-CV-184-JED-FHM |

## OPINION AND ORDER

Before the Court is defendants' Corrected Motion for Summary Judgment and Memorandum of Law in Support (the "Motion") (Doc. 122), which plaintiffs have opposed (Doc. 127). For the reasons below, the Court finds that defendants' Motion should be **granted in part** and **denied in part**.

### BACKGROUND

Plaintiffs George and Janet Martin filed this action against the following defendants: Interstate Battery System of America, Inc., Johnson Controls Battery Group, Inc., Interstate All Battery Centers, Inc., and Distributor Operations, Inc. Plaintiffs' lawsuit seeks recovery for injuries Mr. Martin alleges he sustained to his eyes and face when defendants' battery, which he used to power his fishing boat, exploded while he was fishing on Fort Gibson Lake in Wagoner County, Oklahoma on October 2, 2011. Plaintiffs' Amended Complaint asserts the following seven (7) causes of action: (1) strict liability based on failure to warn, manufacturing defect, and

design defect; (2) negligent failure to warn; (3) negligent design; (4) negligent manufacturing; (5) breach of express warranty; (6) breach of implied warranties of merchantability and fitness for a particular purpose; and (7) loss of consortium. (*See* Doc. 32).

The following facts are undisputed. Mr. Martin purchased defendants' battery (hereinafter the "subject battery") in April 2010 to be used in conjunction with a motor on his mini bass boat. The subject battery is a lead acid battery. Lead acid batteries generate electrical current through chemical reactions, which occur between the positive and negative plates and the electrolyte. Different chemical reactions occur when the battery is being used and when it is being charged. These reactions cause the battery to experience changes. One such change that occurs as part of the normal use and charging cycles of the battery is positive plate growth. Another process that occurs is electrolysis—the breakdown of water in the electrolyte. The parties do not dispute that the subject battery exploded because it was overcharged. When a lead acid battery is overcharged, it incurs excessive plate growth and the electrolyte level becomes severely depleted.

Mr. Martin used a Century Model 87210 charger to charge the subject battery. This charger is an "unregulated charger," which is a standard charger model that "continues to deliver amperage even after the battery has reached full charge." (Doc. 122, ¶ 20). While the amp meter needle would read "zero" when the battery was fully charged, the charger would actually continue to deliver a charge to the fully charged battery. (*Id.* at ¶¶ 21-22). The parties agree that the explosion would not have occurred had an alternative, regulated charger been used. Defendants provided no warning or instruction to Mr. Martin that a regulated charger was the safer charger to use with the subject battery.

Mr. Martin read the instruction manual that accompanied the charger. The manual directed Mr. Martin to "add distilled water in each cell until battery acid reaches level specified by battery manufacturer." (Doc. 122 at 10, ¶ 36; Doc. 127 at 10, ¶ 10). Plaintiffs contend that defendants did not provide any instructions, specifications, or warnings to this effect. Mr. Martin did not check the electrolyte level or add water to the subject battery at any time. (Doc. 122 at 11, ¶ 37).

## LEGAL STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In considering a summary judgment motion, courts determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 at 251-52. The evidence of the non-movant is to be taken as true, and all justifiable inferences are to be drawn in non-movant's favor. *Anderson*, 477 U.S. at 255; *see also Ribeau v. Katt*, 681 F.3d 1190, 1194 (10th Cir. 2012). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment. . . ." *Anderson*, 477 U.S. at 255. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

"When the moving party has carried its burden under Rule 56[a], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citations omitted). When the record, taken as a whole, "could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id.* (quotations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. *Garratt v. Walker*, 164 F.3d 1249, 1251 (10th Cir. 1998).

Because this is a diversity case, the Court applies the substantive law of Oklahoma and federal procedural law. *Ahrens v. Ford Motor Co.*, 340 F.3d 1142, 1145 (10th Cir. 2003). Accordingly, Oklahoma products liability law applies to plaintiffs' claims.

## DISCUSSION

Plaintiffs' Amended Complaint alleges claims of manufacturer's products liability, negligence, breach of warranty, and loss of consortium against defendants. (Doc. 32). Defendants move for summary judgment as to each of these claims. (Doc. 122).

### I. Design and Manufacturer's Defect

Plaintiffs bring three claims premised on design and manufacturing defect: Count I includes allegations of strict liability for design and manufacturing defect, Count III alleges negligent design, and Count IV alleges negligent manufacturing. (*See* Doc. 32). Because plaintiffs have provided no evidence of design or manufacturer's defect, defendants are entitled to summary judgment on any claims that rely entirely on such theories.

#### A. Strict Products Liability

Under Count I, plaintiffs bring a claim for manufacturer's products liability based on both design and manufacturing defects. (Doc. 32). To prevail on a claim of defective design,

4

plaintiffs must show that (1) the battery was defective, (2) the battery was dangerous to an extent not contemplated by an ordinary consumer,[1] (3) the defect existed at the time it left the possession and control of the manufacturer, and (4) the defect proximately caused the injuries. *Ahrens v. Ford Motor Co.*, 340 F.3d 1142, 1145 (10th Cir. 2003) (citing *Woods v. Fruehauf Trailer Corp.*, 765 P.2d 770, 773–74 (Okla.1988); *Lamke v. Futorian Corp.*, 709 P.2d 684, 686 (Okla.1985)). Under Oklahoma law, "[a] product is defective in manufacture if it deviates in some material way from its design or performance standards. The issue is whether the product was rendered unsafe by an error in the manufacturing process." *Wheeler v. HO Sports, Inc.,* 232 F.3d 754, 757 (10th Cir.2000) (internal quotation marks and citations omitted).

Defendants argue that plaintiffs' claims of design and manufacturing defect fail because plaintiffs have failed to present any evidence that the battery was defectively designed or manufactured. (Doc. 122 at 12-13). In response, plaintiffs quote from the report of their expert, Dr. Dean Jacobson. (Doc. 127 at 13). In the cited portion of his report, Dr. Jacobson contends that defendants failed to follow "recognized and established safe product engineering hierarchy." (Doc. 127-2 at 68). This hierarchy, he continues, requires manufacturers first to design their products to eliminate safety hazards, second to guard against hazards that cannot be designed away, and third to warn against remaining hazards. (*Id.*). The report indicates that defendants "fail[ed] to employ any of the elements of the above hierarchy." (*Id.*).

---

[1] To qualify as "unreasonably dangerous," a product "must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *Swift v. Serv. Chem., Inc.,* 310 P.3d 1127, 1131 (Okla. Civ. App. 2013).

To begin with, this conclusory statement cannot constitute evidence under *Daubert*,[2] as it does not enable the Court to judge its reliability. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). A typical sentence from Dr. Jacobson's report reads as follows: "The plate growth and resultant defective conditions resulting in the explosion were not caused by Mr. Martin, but rather by Johnson Controls." (Doc. 127-2 at 82, ¶ 16.35). And again:

> The defective plate growth and corresponding structural degradation conditions in the subject battery resulted in an unreasonably dangerous product which created a substantial risk of personal injury due to the lack of implementation of available or established industry standards and practices and state of the art technology relative to marine battery design, warnings, instructions, fabrication and quality control necessary for safe battery operation and reasonable conformity with consumer expectations.

(*Id.* at 83, ¶ 16.37). At best, this statement could be interpreted to raise allegations of design defect and failure to adequately warn. However, at his deposition, Dr. Jacobson made clear that, apart from inadequate warnings, he did not find that the battery independently suffered from a manufacturing or design defect. (Doc. 127-1 at 27:2-25, 28:6-14).

In other words, plaintiffs have presented evidence of a failure to warn rather than a design or manufacturing defect. As defendants' Reply states, design defect, manufacturing defect, and inadequate warning are three *separate* bases giving rise to a product liability claim. (*See* Doc. 130 at 3). Plaintiffs' attempt to base their claims of manufacturing and design defect upon an alleged inadequate warning thus falls flat. Indeed, plaintiffs' Response appears to concede that any claim of defect is now limited to inadequate warnings. (*See, e.g.*, Doc. 127 at 13 ("The dispute at bar relates to the inclusion or exclusion of adequate instructions and warnings as part of the design and/or manufacturing process.")). Viewing the record in a light most favorable to

---

[2] Defendants' Motion to Exclude Certain Testimony of Plaintiffs' Expert Dean Jacobson (Doc. 107) is still pending before the Court.

plaintiffs, plaintiffs have provided insufficient evidence to show that the battery's design made it less safe than expected. Plaintiffs have put forth no evidence that the battery was rendered unsafe by an effort in the manufacturing process.[3] *See Wheeler*, 232 F.3d at 757. Having reviewed the record and considered plaintiffs' assertions, the Court finds that there are no genuine issues of material fact regarding the existence of a manufacturing or design defect. Accordingly, plaintiffs have forfeited the right to assert a claim premised upon either a design or manufacturing defect theory. Summary judgment as to Count I based on design and manufacturing defect is therefore proper.

### B. Negligence

Plaintiffs also bring two negligence claims against defendants. Oklahoma allows plaintiffs injured by an allegedly defective product to assert a negligence claim in addition to a products liability claim. *Honeywell v. GADA Builders, Inc.*, 271 P.3d 88, 96 (Okla. Civ. App. 2011) ("Even with the advent of strict products liability, the negligence cause of action remains available to a plaintiff injured by a defective product."). "Under Oklahoma law, the three essential elements of a claim of negligence are: '(1) a duty owed by the defendant to protect the plaintiff from injury, (2) a failure to properly perform that duty, and (3) the plaintiff's injury being proximately caused by the defendant's breach.'" *Gaines–Tabb v. ICI Explosives, USA, Inc.*, 160 F.3d 613, 620 (10th Cir.1998) (quoting *Lockhart v. Loosen*, 943 P.2d 1074, 1079 (Okla.1997)). As was the case with their strict liability claim, plaintiffs have failed to

---

[3] The Court's conclusion is not inconsistent with its March 28, 2014 Order (Doc. 93), which determined that Dr. Jacobson's report provided opinions regarding defective design and thus discovery should not have been limited solely to plaintiffs' failure to warn claims. (Doc. 93 at 5-7). First, the standards governing a summary judgment motion are different from those governing discovery disputes. Moreover, the Court is persuaded by the fact that the Dr. Jacobson's deposition testimony as well as plaintiffs' own Response make clear that plaintiffs' claims of manufacturing and design defect are solely premised upon the their allegations of failure to warn.

demonstrate the existence of a genuine issue of material fact regarding their claims that defendants negligently designed or manufactured the battery that injured Mr. Martin. Accordingly, defendants are also entitled to summary judgment as to Counts III and IV of the Amended Complaint. (*See* Doc. 32).

## II. Failure to Warn

Count I of plaintiffs' Amended Complaint alleges three theories for holding defendants strictly liable: design defect and manufacturing defect as described above, but also on the theory that defendants "failed to place sufficient warnings on the battery." (Doc. 32 at ¶¶ 13-16). Count II alleges that defendants' failure to warn was also negligent. (*Id.* at ¶¶ 18-19).

As the cases defendants cite make clear, inadequate warnings themselves make a product defective and a defendant is held strictly liable for injuries caused by the lack of adequate warnings. *See Ahrens v. Ford Motor Co.*, 340 F.3d 1142, 1146 (10th Cir. 2003) (quoting *McKee v. Moore*, 1982 OK 71, 648 P.2d 21, 23) ("A product may be considered 'defective if it is placed in the hands of the ultimate consumer without adequate warnings of the dangers involved in its use.'"); *Holt v. Deere & Co.*, 24 F.3d 1289, 1292 (10th Cir. 1994) (citing *Smith v. United States Gypsum Co.*, 612 P.2d 251, 253–54 (Okla. 1980) ("The alleged defect may be the result of a problem in the product's design or manufacture, or it may be the result of inadequate warnings regarding use of the product.").

In Oklahoma, "[w]hether Plaintiffs are proceeding under a negligence or manufacturer's products liability theory, the law concerning the adequacy of a product warning is similar." *Freeland v. Ameristep, Inc.*, 2014 WL 1646948, at *7-8 (E.D. Okla. Apr. 24, 2014) (citing *Grover v. Superior Welding, Inc.,* 893 P.2d 500 (Okla. 1995) and *Berry v. Eckhardt Porsche Audi, Inc.,* 578 P.2d 1195, 1196 (Okla. 1978)); *see also* 53 A.L.R.3d 239 ("[I]t has been noted

that notwithstanding the fact that there is no cross-reference from § 402A of the Restatement of Torts 2d (which sets out the strict tort liability doctrine) to § 388 of the Restatement of Torts 2d (which spells out the duty to warn in negligence actions), the principles applicable in the latter should be applicable to the former."). Defendants' argument in favor of summary judgment is that defendants had no duty to warn consumers, and that plaintiff cannot prove that defendants' failure to warn caused plaintiff's injury. Each is discussed below.

**A. Duty to Warn**

Under a negligence theory, a manufacturer has a duty to warn of injury caused by a product where it (1) knows or has reason to know the product is likely to be dangerous for the use for which it is supplied, (2) has no reason to believe that the intended user of the product will recognize its dangerousness, and (3) fails to adequately inform the user of the dangerousness. *Duane v. Oklahoma Gas & Elec. Co.*, 833 P.2d 284, 286 (Okla. 1992) (citing Restatement of Torts (Second), § 388). The standard is similar for a strict products liability claim:

> [O]nly where the seller has reason to anticipate that danger may result from a particular use, may he be required to give adequate warning of the danger, and a product sold without such warning is in a defective condition . . . . A duty to warn must also be based upon the foreseeability that the user would use the product in that way, the type of danger involved, and foreseeability of the user's knowledge of the danger.

*Id.* (citing Restatement of Torts (Second), § 402A, Comment h).

As a general rule, "Oklahoma law provides that when a particular danger exists as a consequence of a foreseeable use, and the danger is not obvious or generally known, a duty to warn arises." *Daniel v. Ben E. Keith Co.*, 97 F.3d 1329, 1334 (10th Cir. 1996). Thus, a manufacturer or supplier is under no duty to warn where the product is used in an unlikely or unforeseeable manner. *Duane*, 833 P.2d at 286. However, where the defendant "has reason to

anticipate that danger may result from a particular use," a product sold without a warning regarding that danger is defective. *Id.* Hence, the defendant is liable for injury caused by such a defective product, except where the danger is obvious or generally known or the user knowledgeable. *Id.*

Here, plaintiffs have presented evidence of a danger created by an imminently foreseeable use of defendants' battery. Batteries exist to store energy, and it is reasonably foreseeable that a battery owner would attempt to charge a battery. Plaintiffs have presented evidence that defendants' battery was defective because it failed to warn consumers that it required a type of battery charger designed to prevent overcharging and electrolyte depletion. Specifically, the report by plaintiffs' expert provides support for the claim that defendants had reason to know that their battery was susceptible to the type of degradation that could lead to the eventual explosion that injured Mr. Martin. (Doc. 127-2 at 83). Viewing the facts in the light most favorable to plaintiffs, the typical battery user would not expect an apparently normal use of the battery to cause it to explode. Given that it was foreseeable that a battery owner would attempt to charge his battery, and that defendants had reason to know that unless charged correctly—*i.e.*, with a regulated charger—defendants were under a duty to warn potential battery purchases of this danger. Without a proper warning regarding the use of a charger designed to prevent overcharging and electrolyte depletion, the battery was defective. Thus, defendants' Motion is denied on this ground.

First, defendants' argument that they were under no duty to warn plaintiffs regarding Mr. Martin's charger does not address the lack of warning regarding electrolyte replenishment. Second, the cases defendants cite in support of their argument do not apply to the facts of this case. For example, defendants cite *Schrock v. Wyeth, Inc.*, 727 F.3d 1273 (10th Cir. 2013),

10

where the Tenth Circuit held that brand-name drug manufacturers do not have a duty to warn consumers of dangers associated with their competitors' products, specifically, generic versions of the drug. Defendants also rely on cases from outside the Tenth Circuit for the proposition that a manufacturer has no duty to warn of dangers associated with other manufacturer's products. *O'Neil v. Crane Co.*, 53 Cal. 4th 335, 351, 266 P.3d 987, 997 (2012) (under California law, "the duty to warn is limited to risks arising from the manufacturer's own product," and does not "extend[] to hazards arising exclusively from *other* manufacturers' products" (emphasis in original)); *Rastelli v. Goodyear Tire & Rubber Co.*, 79 N.Y.2d 289, 298, 591 N.E.2d 222, 225 (1992) ("Under the circumstances of this case, we decline to hold that one manufacturer has a duty to warn about another manufacturer's product when the first manufacturer produces a sound product which is compatible for use with a defective product of the other manufacturer."). but none of these cases involve another manufacturer's product that is a non-defective, non-compatible model of a product that is required for the defendant's own product to function.

Defendants repeatedly assert that it was the charger, and not the subject battery, that was defective. But this mischaracterizes the facts—the charger Mr. Martin purchased was a standard, unregulated charger, which, unlike a standard, regulated charger, lacked a feature that would "stop it from overcharging a battery without any user interaction." (Doc. 127-1 at 12:1-3).[4] Viewing the evidence in a light most favorable to plaintiffs, there is nothing in the record to support defendants' allegation that the subject battery was "defective" within the meaning of product liability law. It was simply a different charger model than the one that would have

---

[4] At his deposition, Dr. Jacobson was asked: "If a regulated battery charger would have been used instead of the subject charger, is it your opinion that the subject battery would not have exploded?" He responded: "Yes, that the correct, regulated charge it would have eliminated –not allowed overcharging." (Doc. 127-1 at 17:1-5).

11

ensured that defendants' battery would not be overcharged. The Court is likewise unpersuaded by defendants' assertion that Mr. Martin "misused" the charger. It is unreasonable to assume that Mr. Martin—or any other consumer—would know that the battery was continuing to be charged when the amp meter read zero. A reasonable jury could find that without a warning provided to its customers regarding the safer charger to use, defendants' battery was defective. In any event, plaintiffs have raised a triable issue of fact as to whether defendants were under a duty to warn Mr. Martin regarding the safer charger to use with their battery.

### B. Causation

Defendants assert that plaintiffs cannot prove the causation element of their failure to warn claim as Mr. Martin did not read the warnings the battery did have, nor did he heed the warnings on the battery charger. (Doc. 122 at 14-16).

In order to prevail, plaintiffs must establish that the allegedly defective warning was the cause of Mr. Martin's injuries. "The failure to adequately warn of a known potential risk renders a product defective; however, the plaintiff must establish that the failure to warn caused the injury." *Daniel v. Ben E. Keith Co.*, 97 F.3d 1329, 1332–33 (10th Cir. 1996) (internal citations omitted). Oklahoma law recognizes "a rebuttable presumption that plaintiff would have read and heeded an adequate warning." *Id.* at 1332. In the absence of evidence rebutting the presumption, a plaintiff need not produce evidence that he would have acted differently if an adequate warning had been given. But once the opposing party meets its burden to come forward with evidence rebutting the presumption, the presumption disappears. *Id.* at 1332.

Defendants acknowledge that there is a rebuttable presumption, but argue that here that presumption has been overcome: "Plain and obvious warnings were prominently placed on the cover of his battery. Plaintiff admitted that he knew there was writing on the battery, but that he

12

did not know what it said, and that he did not read any warnings on the battery at any time." (Doc. 122 at 15). In fact, Mr. Martin testified that he saw the writing but did not remember what it said, not that he did not read any warnings on the battery at any time.[5] (Doc. 127-4 at 89:23-90:3). It is likely that a warning that the battery required a specific type of charger would have caught Mr. Martin's attention as he went to charge it, to say nothing of a warning detailing the maintenance required by his battery.

Viewing the facts in the light most favorable to the non-movant, the Court finds that defendants have failed to overcome the presumption that Mr. Martin would have read and heeded an adequate warning. While plaintiffs have forfeited the right to pursue a products liability claim on either a design defect or manufacturing defect theory, they have presented evidence adequate to overcome defendants' motion for summary judgment as to both the strict products liability and negligence claims under a failure to warn theory. Defendants' Motion is denied on this ground.

### III. Breach of Warranty

Plaintiffs allege two claims for breach of warranty: (1) breach of express warranty based on the sale of a defective battery and (2) breach of implied warranty of merchantability and implied warranty of fitness for a particular purpose. (Doc. 32 at ¶¶ 28-35). In response, defendants argue that they are entitled to summary judgment on the following bases: (1) the battery's written warranty "expressly excludes any other warranties, including the implied warranties of merchantability and fitness for a particular purpose; (2) the written warranty is "expressly limited to the replacement (or partial replacement) of the battery"; and (3) the limited warranty states that it "DOES NOT COVER DAMAGE TO THE BATTERY CAUSED BY . . .

---

[5] Defendants note that Mr. Martin did read his charger's instruction manual. (Doc. 122 at 16).

A FAILURE TO KEEP THE BATTERY PROPERLY CHARGED OR MAINTAINED." (Doc. 122 at 24). Plaintiffs do not respond to the Motion with respect to the warranty claims, except to say that "there is indeed a genuine dispute at [sic] to whether or not Martin's use or alleged misuse of the battery at issue was foreseeable for purposes of warranty claims under Oklahoma law." (Doc. 127 at 16).

In Oklahoma, both express and implied warranties are governed by the U.C.C. An express warranty is defined as: "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Okla. Stat. tit. 12A, § 2-313. Moreover, the U.C.C. does not require an express warranty to include "formal words such as 'warrant' or 'guarantee' or . . . a specific intention to make a warranty." *Id.* Here, the warranty clearly states that it does not cover any damage arising from the battery's charge or maintenance. It also states that the warranty is strictly limited to replacement of the battery. Plaintiffs have not raised any argument or provided any evidence that the express warranty was breached. Moreover, plaintiffs concede that overcharging caused the battery to explode and injure Mr. Martin. Thus, summary judgment as to the express warranty claim is proper.

Under Oklahoma law, a warranty of merchantability is implied in every contract for the sale of goods. Okla. Stat. tit. 12A, § 2-314. Implied warranties of fitness and merchantability, however, can be excluded or modified. "[T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous." Okla. Stat. tit. 12A, § 2-316. The Oklahoma

14

U.C.C. defines "conspicuous" as "so written, displayed, or presented that a reasonable person against whom it is to operate ought to have noticed it." Okla. Stat. tit. 12A, § 1-201.

Here, the disclaimer that the battery excludes the implied warranties of merchantability and fitness for a particular purpose appears in writing twice in the same document, first in the Interstate Batteries SLI Warranty and then, in the All Battery Center Store Warranty. (Doc. 108-3). The first appears in a sentence set off from the other text of the Limited Warranty. (*Id.* at 2). There, the word "MERCHANTABILITY" appears in capital letters and the other words in minuscule. (*Id.*). In the second warranty, further down the page, the warranties receive their own paragraph and are written, unlike the rest of the document, in majuscule. (*Id.* at 3). Plaintiffs make no claim to suggest that these warranties do not meet the definition of conspicuous. The Court finds that they do. Accordingly, defendants are entitled to summary judgment as to plaintiffs' claims of implied warranty and express warranty.

## IV. Loss of Consortium

Finally, defendants argue that they are entitled to summary judgment as to Mrs. Martin's loss of consortium claim. As loss of consortium is a derivative claim, Mrs. Martin's claim persists as to the claims remaining in light of this Order. Summary judgment is therefore inappropriate.

## CONCLUSION

For the reasons above, defendants' Corrected Motion for Summary Judgment and Memorandum of Law in Support (Doc. 122) is **granted in part** and **denied in part**.

SO ORDERED this 12th day of August, 2016.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE