# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **GEORGE MARTIN and** | ) | |
| **JANET MARTIN, Husband and Wife** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 12-CV-184-JED-FHM** |
| | ) | |
| **INTERSTATE BATTERY SYSTEM** | ) | |
| **OF AMERICA, INC., a Texas Corporation;** | ) | |
| **JOHNSON CONTROLS BATTERY** | ) | |
| **GROUP, INC., a Wisconsin Corporation;** | ) | |
| **INTERSTATE ALL BATTERY** | ) | |
| **CENTER, INC., a Texas Corporation;** | ) | |
| **DISTRIBUTOR OPERATIONS, INC.,** | ) | |
| **A Texas Corporation,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Before the Court is defendants' Motion to Exclude Certain Testimony by Plaintiffs' Expert Dean Jacobson (Doc. 107), and Plaintiffs' Motion to Disqualify or Limit Defendants' Experts Testimony with Brief in Support (Doc. 136). Both Motions are opposed. The Court has provided the factual background of this case in its previous Order. (Doc. 188).

## I.    Standards Governing Expert Testimony

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. The rule provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)    the testimony is based on sufficient facts or data;

> (c)      the testimony is the product of reliable principles and methods; and
>
> (d)      the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 597 (1993), the Supreme Court held that the rule requires the district courts to act as gatekeepers and ensure that scientific expert testimony is relevant and reliable.  An expert's opinion must be based on "more than subjective belief or unsupported speculation."  *Daubert*, 509 U.S. at 590. The applicability of *Daubert* was later expanded to apply to the opinions of all experts, not just scientific experts.  *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) ("We conclude that *Daubert*'s general holding—setting forth the trial judge's general 'gatekeeping' obligation— applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge.").

In *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227 (10th Cir. 2005), the Tenth Circuit rehearsed the two-part inquiry undertaken by district courts when considering a *Daubert* challenge.  First, the court must determine whether "the expert's proffered testimony . . . has 'a reliable basis in the knowledge and experience of his [or her] discipline.'"  400 F.3d at 1232-33 (quoting *Daubert*, 509 U.S. at 592).  This involves "conducting a preliminary inquiry into the expert's qualifications and the admissibility of proffered evidence."  *Id.* at 1233.  An impermissible analytical gap in an expert's methodology can be a sufficient basis to exclude expert testimony under *Daubert*.  *See id.*; *see also Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 886 (10th Cir. 2005).  "Neither *Daubert* nor the Federal Rules of Evidence 'require[ ] a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert.'" *Norris*, 397 F.3d at 886 (quoting *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

The Supreme Court set forth several non-exclusive factors that a court may consider in determining whether proposed expert testimony will assist the trier of fact: (1) "whether it can be (and has been) tested"; (2) "whether the theory or technique has been subjected to peer review and publication"; (3) the "known or potential rate of error" of a technique; and (4) whether the theory or technique has "general acceptance," which is an important consideration because "'a known technique which has been able to attract only minimal support within the community' may properly be viewed with skepticism." *Daubert*, 509 U.S. at 593-94.  The inquiry into these factors is "a flexible one," and the focus is "on principles and methodologies, not on the conclusions that they generate." *Id.* at 593.

Under the second part of the *Daubert* analysis, the court must ensure that the proposed testimony is relevant. *Bitler*, 400 F.3d at 1234 (quoting *Daubert*, 509 U.S. at 597).  "A trial court must look at the logical relationship between the evidence proffered and the material issue that evidence is supposed to support to determine if it advances the purpose of aiding the trier of fact." *Id.*

While the most common method for a court to assess a *Daubert* motion is to conduct a hearing, such a hearing "is not specifically mandated." *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000).  Here, neither party has indicated that such a hearing is necessary.  After careful review of the parties' motions, responses, and exhibits, the Court likewise believes a hearing is not required in this case.

II.    **Defendants' Motion to Exclude Certain Testimony by Plaintiffs' Expert Dean Jacobson (Doc. 107)**

Defendants' Motion seeks to exclude Dr. Dean Jacobson's opinion as to the existence of a warning defect.  Specifically, defendants argue that first, Dr. Jacobson is not qualified to offer

such testimony and second, his opinion regarding the alleged warning defect is unreliable and irrelevant.

## A.  Dr. Jacobson's Qualifications

Defendants argue that plaintiffs' expert, Dr. Jacobson, is not qualified to testify as an expert and that his expert opinion should therefore be excluded.   (Doc. 107 at 4).   According to defendants, the "only defect Jacobson identified involved the battery's warnings," and whatever expertise Jacobson might have, he is not an expert in warnings.  (Doc. 107 at 2).   In response, plaintiffs correctly note that the Court ruled that Dr. Jacobson opined on manufacturing and design defect as well: "It is clear from . . . Dr. Jacobson's report that, in addition to a failure to warn, he opined that the battery itself was defective and that the purported defect may have resulted in the condition that brought about the explosion."  (Doc. 93 at 6).   However, because the Court granted summary judgment on plaintiff's claims of design and manufacturing defects (Doc. 188), plaintiffs' argument regarding Jacobson's purported opinions on these claims are moot.

As to the warnings testimony, defendants argue that Dr. Jacobson is not qualified because he lacks expert experience related to warnings, he has never developed a warning specifically to instruct the public for a consumer product, he has never developed a battery warning, and he employed flawed methodology because he developed his recommended warnings in only one hour.   (Doc. 107 at 6-7). In response, plaintiffs assert that Jacobson is qualified by his knowledge, experience, training, and education, and thus satisfies the requirements set forth in Fed. R. Evid. 702(a).   (Doc. 116 at 10).   Specifically, Dr. Jacobson holds a Ph.D. in Thermodynamic, Direct Energy Conversion Engineering and has been an engineering professor for over fifty years.  He created warnings as part of his job as a design and fabrication engineer,

and started a consulting engineering-legal firm at which he has conducted investigations related to product accidents for over forty years.  (*Id.* at 8).  Dr. Jacobson has demonstrated specialized industry knowledge relevant to this case, by reviewing manuals produced by Battery Council International, the Department of Transportation National Safety Administration, and is well-versed in product safety regulations including ANSI.  In addition, Dr. Jacobson belongs to several professional societies and associations related to engineering and forensics.  (*Id.* at 9).

Dr. Jacobson's report opines that the existence of a warning related to the type of charger and electrolyte level maintenance would have prevented Mr. Martin's injuries.  (Doc. 107-3 at 91, ¶¶ 16.40-16.42).  Contrary to defendants' assertion, Dr. Jacobson has qualified as an expert witness in several prior cases regarding warning-related issues, and a summary of nine such cases was provided to the Court.  (Doc. 116-5).  However, none of the nine cases involved issues related to warnings specifically for batteries.  While this fact alone does not suggest that Dr. Jacobson is not qualified to provide *any* warnings-related testimony in the present case, the Court finds merit to defendants' argument in relation to Dr. Jacobson's proposed warnings.

Plaintiffs state that Dr. Jacobson is qualified to testify regarding "whether or not [a] defect in instructions and warnings contributed to the cause of plaintiff George Martin's injuries."  (Doc. 116 at 10).  But plaintiffs make no mention of his expertise in producing recommended warnings.  While Dr. Jacobson testified that as an expert witness, he would commonly criticize existing warnings and create recommended warnings based on such warnings, in the present case there was no existing warning related to the charger or electrolyte maintenance for him to critique.  Therefore, given the fact that Dr. Jacobson had never drafted a battery warning prior to this case, and that his expertise creating proposed warnings arose in cases with existing but allegedly inadequate warnings, the Court will limit Dr. Jacobson's

testimony and not allow him to provide an opinion on what hypothetical warnings should have said. (*See* Doc. 107-3 at 74-75).

The cases cited by defendants are instructive. First, the Court notes that all of the cases defendants rely on involve challenges to expert testimony regarding the adequacy of existing product warnings. By contrast, the present case is premised upon the *lack of a warning* on the battery related to the charger and electrolyte replenishment and whether defendants' failure to include any such warning caused the battery to be defective. Second, in the cases cited by defendants, the fact that the experts had not previously created a warning specific to the product at issue was one of several reasons the courts determined the experts were unqualified to provide any opinion testimony related to warnings. *See, e.g.*, *Pearson v. Young*, 2002 WL 32026157, at *7 (W.D. Okla. Jan. 17, 2002) (engineer not qualified to provide opinion on adequacy of warning on forklift because (1) he had never previously written a warning label for a forklift, (2) he failed to make a claim that "this warning would have prevented the accident in this case," and (3) he failed to "test[] his proposed warning, either in the context of his assignment in this case or otherwise"); *Robertson v. Norton Co.*, 148 F.3d 905, 907 (8th Cir. 1998) (expert's warning testimony inadmissible because he lacked experience designing a warning for similar products, his opinion was not reliable and failed to assist the jury, and was unfairly prejudicial). Although Dr. Jacobson never previously drafted a recommended warning for a battery, his qualifications and methodology otherwise satisfy Rule 702.

Moreover, this is not a case where the proposed expert lacks any experience in warnings whatsoever, which would counsel against the admissibility of that expert's opinion. *See Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001) (orthopedic surgeon not qualified to provide warnings testimony where she had never previously drafted any warning of

6

any kind); *Miller v. Pfizer, Inc.*, 196 F. Supp. 2d 1062, 1088–89 (D. Kan. 2002), *aff'd,* 356 F.3d 1326 (10th Cir. 2004) (limiting expert testimony to the effect a given warning might have had generally because proposed expert had no relevant warnings expertise and could thus not critique the warning's "display, syntax, and emphasis").

Accordingly, while Dr. Jacobson is qualified to opine generally on the defectiveness of the battery for lack of a warning related to the charge type and electrolyte level maintenance, he is not qualified to testify as to the specifics of how hypothetical warnings on the battery should have been expressed.[1]

### B.  Relevancy of Dr. Jacobson's Testimony

Defendants' Motion also argues that Dr. Jacobson's testimony is irrelevant.  This contention is based solely on defendants' assertion that Mr. Martin did not read "any of the warnings on the battery, and could not remember the warnings on any battery he had ever owned or worked with."  (Doc. 107 at 11). The Court's summary judgment Order, however, determined that a genuine dispute of material fact existed because "Mr. Martin testified that he saw the writing but did not remember what it said, not that he did not read any warnings on the battery at any time."  (Doc. 188 at 13).  Moreover, defendants fail to show how failure to remember specific warnings on a battery justifies granting their Motion.

In addition, the case cited by defendants in support of this argument, *Smith v. Sears Roebuck & Co.*, 232 F. App'x 780, 784 (10th Cir. 2007) (unpublished), is easily distinguishable because there, it was clearly established that the plaintiff never read the owner's manual which contained the allegedly inadequate warnings.  The Tenth Circuit accordingly held that the

---

[1] Because the Court has concluded that Dr. Jacobson may not testify regarding proposed warnings, defendants' arguments regarding the reliability and relevancy of his proposed warning (Doc. 107 at 8-10) are moot.

expert's testimony concerning the warnings was "irrelevant because it did not apply to the facts of the case." *Id.* at 784. As Mr. Martin has presented sufficient evidence to suggest that he did read the warnings on the battery, *Smith* is inapplicable. Thus, defendants' argument that Dr. Jacobson's testimony is irrelevant fails.

Although defendants did not raise this argument, the Court also determines that the recommended warnings included in Dr. Jacobson's report are not relevant to plaintiffs' case, which is premised entirely upon defendants' failure to provide a warning. *See Bitler*, 400 F.3d at 1234 ("Evidence appropriate for one purpose, therefore, may not be relevant for a different purpose, and it is the trial court's task to make this fitness determination."); *Reardon v. Illinois Tool Works, Inc.*, 2013 WL 1482709, at *4 (E.D. Pa. Apr. 10, 2013) (where a case is premised upon defendants' failure to include a warning "specific to the risk encountered by the plaintiff," the issue is not the "exact wording or layout of the warning"); *see also Pineda v. Ford Motor Co.*, 520 F.3d 237, 248 (3d Cir. 2008) (determining that expert "did not have to develop or test alternative warnings to render an opinion that the 2002 service manual did not provide adequate, step-by-step instructions"). Further, the Court cannot find that testimony regarding the specific wording or display of proposed warnings will enable the "trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(b). Such testimony may in fact confuse the issues for the jury. General testimony regarding the necessity of a warning, as discussed above, is sufficient.

Defendants' Motion (Doc. 107) is therefore **granted** in part and **denied** in part.

## III. Plaintiffs' Motion to Disqualify or Limit Defendants' Experts Testimony with Brief in Support (Doc. 136)

Plaintiffs' Motion seeks to disqualify Dr. Joseph Liedhegner from presenting expert testimony at trial and limit the expert testimony of John Devitt. (Doc. 136). To the extent that

plaintiffs' Motion is premised on testimony regarding their claims of manufacturing defect and design defect, those claims were granted in favor of defendants pursuant to the Court's order on summary judgment and are no longer at issue.

### A.  Dr. Joseph Liedhegner

Dr. Liedhegner is a Manager in Engineering and Product Development for defendant Johnson Controls Battery Group, Inc. ("Johnson Controls"). (Doc. 108-3 at 1, ¶ 1).  He has a Bachelor's degree, Master's degree, and a Ph.D. in Chemical Engineering.  His job duties with Johnson Controls include analyzing lead-acid batteries and providing engineering services and product development for lead-acid batteries.  He also conducts field and safety analyses for lead-acid batteries.  (*Id.*).  Defendants' Final Witness List represents that Dr. Liedhegner is an expert and fact witness who will testify "regarding his inspection of the battery, the lack of any defect in the battery at issue, the design and manufacture of the battery, the appropriate warnings used on the battery, and overcharging/external spark as the cause of the alteration and explosion at use, consistent with Defendants Rule 26(a)(3) expert disclosures and Dr. Liedhegner's deposition in this matter."  (Doc. 156).

Plaintiffs seek to disqualify Dr. Liedhegner as an expert witness, arguing the following: (1) he may not provide cause and origin testimony related to the battery explosion because he stated he would not do so at his deposition, (2) he admitted that he is not an expert in warnings and thus cannot provide testimony related to warnings, (3) he is incompetent to opine on design defect,[2] and (4) he is not qualified to testify that Mr. Martin's charger was defective.[3] (Doc. 136 at 4-5). Plaintiffs argue that Dr. Liedhegner is at most a fact witness in this case.

---

[2] Because the Court has found in favor of defendants on plaintiffs' claims of design defect and manufacturing defect, this testimony is irrelevant to the trial and will not be allowed.

### 1. Cause and origin testimony

Plaintiffs argue that because Dr. Liedhegner stated during his deposition that he will not provide testimony regarding the cause and origin of Mr. Martin's battery explosion, he should be precluded from offering such testimony.  (Doc. 136 at 4).  Defendants respond that plaintiffs have misrepresented Dr. Liedhegner's testimony, which in fact states that he would opine as to two potential causes of the explosion: an external spark source and severe overcharging.  This opinion would support defendants' position that a battery defect did not cause the explosion. (Doc. 149 at 11-12).

The record reflects that the proposed cause and origin testimony is solely related to plaintiffs' claims of design defect and manufacturing defect, not warnings defect.   Dr. Liedhegner's deposition testimony shows that the legal liability investigations he typically conducted for defendant Johnson Controls were limited to (1) identifying whether the battery at issue is a Johnson Controls battery, and (2) *inspecting the battery for any manufacturing or design defects that may have led to the accident*.   (Doc. 136-1 at 26:5-10 (italics added)). Defendants' Response then states: "Dr. Liedhegner testified that he could rule out a defect in the subject battery as the cause of the explosion because there was absolutely no evidence of a defect observed through examination and testing of the subject battery.   Instead, his investigation pointed to two possible potential causes."  (Doc. 149 at 11-12). Because it is clear that the

---

[3] In passing, plaintiffs suggest that Dr. Liedhegner's employment with defendant Johnson Controls counsels in favor of disqualifying him as an expert.  (Doc. 136 at 3).  As defendants properly state, plaintiffs once again provide no case law in support of their claims.  (Doc. 149 at 7).  In any event, an expert's bias goes to the weight of the expert's testimony rather than to its admissibility and "the bias of the witness is properly explored in cross-examination."  *Seikel v. Am. Med. Sec. Life Ins. Co.*, 2007 WL 4859272, at *2 (W.D. Okla. Feb. 26, 2007); *see also Tingey v. Radionics*, 193 F. App'x 747, 767 (10th Cir. 2006) (unpublished) ("'[D]isputes as to the strength of [an expert's] credentials . . . go to the weight, not the admissibility of his testimony.").

testimony resulting from his investigation was intended to rebut plaintiffs' claims of design defect and manufacturing defect, neither of which are at issue, plaintiffs' request is moot.

### 2. Warnings testimony

Next, plaintiffs argue that Dr. Liedhegner may not offer any opinion testimony regarding warnings because he admitted during his deposition that he is not a warnings expert. (Doc. 136 at 4). Defendants do not contest Dr. Liedhegner's admission, stating that Dr. Liedhegner has never claimed "to be qualified in writing warnings or determining color, shape, font size or wording." (Doc. 149 at 2). However, defendants argue that Dr. Liedhegner is qualified to provide expert testimony on "the foreseeable risks of harm with the product," which would allow him to opine on the necessity of a warning associated with such risks. (*Id.* at 3).

The Court agrees with defendants. An engineer who may not be a warnings expert can still "opine on the necessity of a warning based on 'specialized, rather than generalized, experience' in the area." *Reardon*, 2013 WL 1482709, at *3 (quoting *Pineda v. Ford Motor Co.*, 520 F.3d 237, 248 (3d Cir. 2008)).[4] It follows that engineers who understand the mechanics and risks associated with a particular product can provide opinions on whether a proper warning as to certain risks are necessary. *See id.*; *see also Meneely v. Denman Tire Corp.*, 1995 WL 902213, at *5 (N.D. Fla. July 20, 1995) (expert who was not experienced in designing warnings could still provide opinion testimony about the risks and harms associated with the product). Defendants have provided sufficient evidence to show that Dr. Liedhegner, a battery engineer with multiple degrees in chemical engineering, employment history as a battery design engineer,

---

[4] The Court finds *Reardon* particularly persuasive because there, as in this case, the plaintiff's warnings claim was also premised on the absence of a specific warning, that is "there [was] no warning specific to the risk encountered by the plaintiff." *Reardon*, 2013 WL 1482709, at *4.

and work experience directly related to lead acid battery design, understands the mechanics and risks of Mr. Martin's battery and may reliably provide such an opinion.

### 3.   Defective charger testimony

Lastly, plaintiffs argue that Dr. Liedhegner is not qualified to opine that the battery charger Mr. Martin used to charge the subject battery is "defective," because he admitted during his deposition that he lacks knowledge regarding chargers, and he never examined or identified the charger Mr. Martin used.  (Doc. 136 at 5).  Defendants respond that Dr. Liedhegner may offer such testimony because he relied on the report of plaintiffs' expert, Dr. Dean Jacobson, to reach his conclusion.  (Doc. 149 at 11).

In support of their claim, defendants cite *Palmer v. Asarco Inc.*, 2007 WL 2298422 (N.D. Okla. Aug. 6, 2007) for the proposition that the fact an expert "rel[ies] on the findings of other experts as a factual basis for his opinions is not a ground for exclusion as long as other experts in the field would rely on that type of evidence."  *Id.* at *5 (excluding expert testimony based upon other experts' reports because the expert's finding was purely speculative).  However, the same case makes clear that the opinion must still be based upon a reliable methodology and cannot be based on speculation.  *Id.*  Here, Dr. Jacobson's report did not provide findings to support an inference that the battery charger was defective or flawed, contrary to defendants' representation.  Rather, his report states that the subject charger was an unregulated charger, which is a type of charger that "is not voltage or current regulated at all available settings.  This means that even after the subject battery reached the fully charged condition, [Mr. Martin's] charger continued to supply the battery with excessive current."  (Doc. 136-3 at 74).  Dr. Liedhegner's opinion that the charger was "defective" is precisely the type of speculation containing an "impermissible analytical gap" that *Daubert* instructs courts to exclude—Dr. Liedhegner, who admits that he

lacks specialized knowledge regarding chargers, employs no methodology to reach this conclusion that the Court is able to discern.  Nor has Dr. Liedhegner shown, as he must, that other experts in the field would rely on the statements in Dr. Jacobson's report to support his opinion that the subject charger was defective.  *See Palmer*, 2007 WL 2298422 at *5.  Thus, Dr. Liedhegner cannot offer this testimony at trial.

### B.  John Devitt

Defendants' proposed expert witness John Devitt ("Mr. Devitt") is a consulting electrical engineer who operates a battery research and development laboratory.  (Doc. 136-2 at 4:13-14; Doc. 149-2).  His curriculum vitae states that he specializes in aqueous lead acid batteries, solves technical problems for battery makers and users, evaluates battery materials, and provides assistance in litigation for products liability cases.  (Doc. 149-2).  At his deposition, Mr. Devitt testified that he has conducted over 210 lead acid battery investigations.  (Doc. 136-2 at 11:4-14).  He also submitted an expert report.  (Doc. 149-2).

Defendants' Final Witness List represents that  Mr. Devitt will provide "[e]xpert witness testimony consistent with his inspection of the battery, alteration and overcharging of the battery, the lack of any manufacturing, design, or warning defect in the subject battery, and the operating and exploding of batteries generally, consistent with Mr. Devitt's report is [sic] this matter."  (Doc. 156).  Plaintiffs' Motion argues that Mr. Devitt may only provide expert opinion testimony on the cause and origin of the battery explosion, and that he cannot testify regarding warnings or design defects.   Because plaintiffs' claims of design defect were decided at the summary judgment stage, this request is denied as moot, and the Court only addresses plaintiffs' challenge to Mr. Devitt's proposed testimony on warnings.

### 1.  Warnings testimony

Plaintiffs argue that "Mr. Devitt is likewise incompetent to give opinions [regarding warnings] for the same reason as admitted by Dr. Liedhegner."  (Doc. 136 at 10).  In response, defendants reiterate that although Mr. Devitt testified that he is not an expert in designing warnings, he is an experienced engineer and as such may opine on the risks and hazards associated with the battery that necessitate a warning.  (Doc. 149 at 2).  For the same reasons the Court allowed Dr. Liedhegner to provide limited expert testimony on warnings, the Court will permit Mr. Devitt to do the same.  The Court also notes that Mr. Devitt has sufficient "scientific, technical, or other specialized knowledge" that will assist the jury in understanding whether a warning would have been necessary based on the risks and hazards inherent in Mr. Martin's battery.  *See* Fed. R. Evid. 702(a).  Accordingly, Mr. Devitt may testify as to the cause and origin of the battery explosion, which plaintiffs have conceded, as well as provide limited testimony regarding warnings.

Plaintiffs' Motion (Doc. 136) is therefore **granted** in part and **denied** in part.

## IV.   Conclusion

IT IS THEREFORE ORDERED that defendants' Motion to Exclude Certain Testimony by Plaintiffs' Expert Dean Jacobson (Doc. 107) and Plaintiffs' Motion to Disqualify or Limit Defendants' Experts Testimony with Brief in Support (Doc. 136) are **granted in part and denied in part** as set forth above,

SO ORDERED this 18th day of August, 2016.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE