## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GEORGE MARTIN and <br> JANET MARTIN, Husband and Wife, <br><br> Plaintiffs, <br><br> v. <br><br> INTERSTATE BATTERY SYSTEM <br> OF AMERICA, INC., a Texas Corporation; <br> JOHNSON CONTROLS BATTERY <br> GROUP, INC., a Wisconsin Corporation; <br> INTERSTATE ALL BATTERY <br> CENTER, INC., a Texas Corporation; <br> DISTRIBUTOR OPERATIONS, INC., <br> A Texas Corporation, <br><br> Defendants. | Case No. 12-CV-184-JED-FHM |

## OPINION AND ORDER

Before the Court is plaintiffs' Renewed Motion to Allow Substitution of Expert Due to Illness (Doc. 185) (the "Motion"), which defendants have opposed (Doc. 187).

### I.  Background

On April 19, 2016, plaintiffs requested the Court to hold a status conference to resolve several issues, including their request to replace their expert witness, Dr. Dean Jacobson, with Dr. Bosch for medical reasons. (Doc. 178). The Court granted the plaintiffs' request, held a status conference on May 17, 2016, and subsequently directed the parties to resolve the issue on their own. (Doc. 182). On June 21, 2016, plaintiffs filed the instant Motion, asserting that the parties had reached an "impasse" and could not reach an agreement regarding the substitution of Dr. Jacobson. (Doc. 185 at 3, ¶ 4). The case is set for trial on September 19, 2016.

## II.   Discussion

Plaintiffs' Motion seeks to replace Dr. Jacobson with his colleague, Dr. Bosch, as their expert at trial. (Doc. 185). Plaintiffs represent that Dr. Jacobson recently underwent open-heart surgery and has received an order from his physician to discontinue stressful work, such as testifying as an expert witness, during his recovery process. (*Id.*). In response, defendants argue that plaintiffs' Motion is unsupported by case law and admissible evidence, that substitution at this late stage would unfairly prejudice defendants, and that the premise for the Motion is unfounded because Dr. Jacobson continues to testify as an expert in other cases. Defendants further argue that plaintiffs are "seeking to better their position in this lawsuit through a substitution of experts," specifically that Dr. Bosch's expertise surpasses that of Dr. Jacobson, and that he may change the prior opinions provided by Dr. Jacobson. (Doc. 186 at 7-8). Plaintiffs' Reply requests that the Court allow the substitution and provide defendants the opportunity to take Dr. Bosch's deposition if they choose to do so. The Reply provides affidavits from both Dr. Jacobson and Dr. Bosch, as well as a letter from Dr. Jacobson's physician. (Docs. 187-1, 187-2, 187-3).

Federal Rule of Civil Procedure 26(a)(2) requires parties to disclose the identity of any expert witnesses and their expert witness reports. Federal Rule of Civil Procedure 37(c)(1) provides that where a party fails to timely provide the information required under Rule 26(a)(2), that information should be excluded "unless the failure [is] substantially justified or is harmless." Here, the Court's Amended Scheduling Order required that plaintiffs identify their experts and provide any expert disclosures by May 1, 2013. (Doc. 50). The discovery cut-off date was August 30, 2013. (Doc. 56). Dr. Jacobson was deposed on July 30, 2013. Plaintiffs

first disclosed to the Court their intent to substitute Dr. Jacobson with Dr. Bosch on April 19, 2016. (Doc. 178).

"The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.,* 170 F.3d 985, 993 (10th Cir.1999) (quoting *Mid–America Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1363 (7th Cir. 1996)). While a district court is not required to make "explicit findings" regarding whether the failure to disclose is substantially justified or is harmless, it should be guided by the following factors: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness. *Id.*

As an initial matter, defendants' argument that the Motion is not ripe is now moot, as it rested on the fact that, at the time, the Court had not yet issued its rulings on defendants' summary judgment or *Daubert* motions. In this case, plaintiffs' late disclosure of Dr. Bosch is substantially justified because of Dr. Jacobson's unexpected emergency coronary bypass surgery and health issues related to his previous diagnosis of Parkinson's disease. After careful review of the parties' briefing and related exhibits, the Court cannot find that there is bad faith on plaintiffs' part, despite defendants' assertions to the contrary. Specifically, the affidavits of Dr. Bosch and Dr. Jacobson directly contradict defendants' assertion that Dr. Jacobson continues to testify as an expert.[1] The affidavits make clear that Dr. Jacobson has informed all individuals at

---

[1] In their Objection to plaintiffs' Motion, defendants suggested that Dr. Jacobson has continued to testify as an expert. In support of this argument, defendants provided the Court with an FEI engagement letter for expert services dated May 11, 2016, which suggests that Dr. Jacobson and Dr. Bosch were retained by a law firm to provide litigation-related services, including providing expert witness testimony. (Doc. 186-3). In response, plaintiffs state that the presence of Dr.

his consulting firm, Forensic Engineering, Inc. ("FEI"), that he can no longer testify in any case due to his health, and also that he has not testified as an expert witness since 2015. (Doc. 187-1 at 1, ¶ 2; Doc. 187-2 at 1, ¶ 2). Dr. Jacobson's affidavit states that at this time, he is solely a part-time consultant for FEI. (Doc. 187-2 at 1, ¶ 2). In sum, this evidence counsels against an inference of bad faith.

The Court disagrees with defendants' argument that the Motion should be denied because it will cause them unfair prejudice. First, Dr. Bosch is co-owner of FEI, along with Dr. Jacobson, and represented to the Court that he provided substantial contributions to Dr. Jacobson's expert report, and also designed and created the recommended warnings contained therein. (Doc. 178, Exh. B). The Court also notes that Dr. Bosch's name appears on the cover page of Dr. Jacobson's expert report. Other district courts have held that no prejudice exists where a substituted expert provides testimony on the same subject. *See e.g.*, *Baumann v. American Family Mut. Inc. Co.*, 278 F.R.D. 614, 2012 WL 27652, *2 (D. Colo. 2012) (no prejudice from substituting an expert close to trial who "will be testifying about the same general subject matter" as previously disclosed expert); *Morel v. Daimler-Chrisler Corp.*, 259 F.R.D. 17, 21 (D. Puerto Rico 2009) (no prejudice caused by substitution of expert because party against whom the testimony was offered "had notice of the possibility of substitution [and would] not be surprised by new subject matter or a new theory of liability"). Second, in his letter, Dr. Bosch stated that his "conclusions and opinions are identical to the conclusions and opinions given by

---

Jacobson's name on the engagement letter does not imply that Dr. Jacobson is testifying. Plaintiffs point to the affidavits of Dr. Bosch and Dr. Jacobson to clarify that the letter is FEI's form retainer and engagement letter, which has not yet been updated to reflect that Dr. Jacobson will no longer provide expert testimony. (Doc. 187-1 at 2, ¶¶ 3, 6). Moreover, Dr. Jacobson never communicated with the law firm and Dr. Bosch informed the law firm that he would be the only FEI engineer testifying as an expert in the case. (Doc. 187-1 at 2, ¶ 4; Doc. 187-2 at 1-2, ¶ 3).

Dr. Jacobson." (Doc. 178, Exh. B). Because defendants had notice of the possibility of expert substitution, the fact that Dr. Bosch worked directly with Dr. Jacobson on the report submitted in this case, and Dr. Bosch's representation that he has identical opinions and conclusions to those of Dr. Jacobson, the risk of prejudice or surprise to defendants is exceedingly low.

Accordingly, the Court finds that the substitution of Dr. Bosch is substantially justified, particularly in light of the fact that the substitution was necessitated through no fault of the plaintiffs. In an effort to curtail the prejudice to defendants caused by the substitution, however, the Court will limit Dr. Bosch's expert testimony. Specifically, Dr. Bosch's expert testimony will be limited to the four-corners of Dr. Jacobson's expert report—that is, he will not be allowed to testify beyond the scope of what Dr. Jacobson's testimony would have been.[2] To be clear, Dr. Bosch may not testify in a manner that is inconsistent with or contrary to Dr. Jacobson's opinions, and he must reach the same conclusions as Dr. Jacobson. If defendants find it necessary, they may depose Dr. Bosch for a period of time no longer than two (2) hours, at a location of defendants' choice. If Dr. Bosch covers new material in his deposition, defendants may file a motion to exclude that portion of his testimony.[3] All issues related to attorneys' fees

---

[2] The Court's Order regarding Dr. Jacobson's expert opinion is applicable here, particularly as to expert testimony regarding proposed warnings. (*See* Doc. 189). While Dr. Bosch, unlike Dr. Jacobson, appears to have experience testifying in warning defect cases involving batteries and asserts that he drafted the proposed warnings included in Dr. Jacobson's expert report (Doc. 178, Exh. B), he will not be allowed to testify regarding any proposed warnings because (1) Dr. Jacobson would not have been allowed to do so, and (2) the Court's Order determined that proposed warning testimony is irrelevant in cases premised upon a lack of warning as opposed to an inadequate existing warning. Accordingly, Dr. Bosch will be able to testify as to the general need for a warning, but not the specifics of what a warning should have said.

[3] Other district courts have found similar remedies appropriate to cure prejudice to the opposing party when granting a delayed request for expert substitution. *See, e.g.*, *Baumann*, 278 F.R.D. at 616 (directing that substitute expert's "opinion should not stray from the subject matter of [original expert's] opinion"; *Morel*, 259 F.R.D. at 22 (restricting substitute expert testimony to testimony of original expert); *Manildra Mill. Corp. v. Ogilvie Mills, Inc.*, 1991 WL 205691, at *2

and costs, including those associated with preparing for and taking Dr. Bosch's deposition will be deferred until after the trial.

### III. Conclusion

IT IS THEREFORE ORDERED that plaintiffs' Renewed Motion to Allow Substitution of Expert Due to Illness (Doc. 185) is **granted**.

SO ORDERED this 18th day of August, 2016.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE

---

(D. Kan. Sept. 23, 1991) (limiting substitute expert testimony to original expert's previously disclosed testimony and allowing opposing party to depose substitute witness).